```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------X
DENNIS F. GROSS, M.D., AND M/D      :
SKIN CARE LLC,                      :
                                    :
                Plaintiffs,         :
                                    :
            -against-               :          **OPINION**
                                    :          03 Civ. 3089 (RLC)
BARE ESCENTUALS BEAUTY, INC., MD    :
FORMULATIONS, INC. F/K/A            :
BIOCEUTIX, INC., AND BARE           :
ESCENTUALS BEAUTY, INC. F/K/A MD    :
BEAUTY, INC.,                       :
                                    :
                Defendants.         :
_____X
BARE ESCENTUALS BEAUTY, INC. AND    :
MD FORMULATIONS, INC.,              :
                                    :
                Counterclaimants,   :
                                    :
            -against-               :
                                    :
DENNIS F. GROSS, M.D., AND M/D      :
SKIN CARE LLC,                      :
                                    :
                Counterdefendants.  :
                                    :
------------------------------------X
```

APPEARANCES

MORRISON COHEN LLP
Attorneys for Plaintiffs
909 Third Avenue
New York, NY 10022

      FRED H. PERKINS
          Of Counsel


LATHAM & WATKINS LLP
Attorneys for Defendants
600 West Broadway, Suite 1800
San Diego, CA 92101

      JENNIFER L. BARRY
          Of Counsel

ROBERT L. CARTER

Currently before the court is defendants' motion for partial summary judgment on plaintiffs' fifth and sixth claims for relief. For the reasons herein, the court denies defendants' motion for partial summary judgment on plaintiffs' fifth claim, as it pertains to the claims involving the Alpha Beta trademark, and grants it as it pertains to plaintiffs' other claims. The court grants defendants' motion for partial summary judgment on plaintiffs' sixth claim for relief.

**BACKGROUND**

*MD Skincare Line*

Dennis F. Gross is a well-known dermatologist based in New York City. See Second Am. Compl. ¶ 1. He is the principal founder and co-owner of MD Skincare LLC, a New York limited liability company with its principal place of business in New York City. Id. at ¶¶ 2-3. MD Skincare formulates, sells, and markets skin treatment products in the United States and internationally. Id. at ¶ 2. Dr. Gross owns, and MD Skincare uses the following trademarks: 1) M.D. Skincare, 2) M.D. Skin Care, and 3) MD Skincare Dr Dennis Gross. Id. at ¶ 3.

The original packaging for the MD Skincare logo consisted of "M.D." in a green circle with the words "Skin Care" underneath the circle and terracotta accents. See

Barry Decl. ¶ 4, 6, Exh. 3, 6 at 85: 9-20.  In 2003, MD Skincare underwent a rebranding, and the package was changed.  Id. at ¶ 6, Exh. 6 at 128: 21-25.  The new package was white and metallic gray with orange.  Orange was featured prominently in certain packages and used as an accent color in other packages.  The logo was also redesigned to all lowercase letters with no periods in the bolded "md."  The products are currently sold through several retailers, including Sephora, Ulta, and Nordstrom.

Gross is also the creator of Alpha Beta peel products, and he is the owner of the "Alpha Beta" trademark in the United States.  See Second Am. Compl. ¶ at 93.  Dr. Gross was issued a federal trademark registration for "Alpha Beta" on August 1, 2000, id. at ¶ 93, and sold products using this trademark through MD Skincare, id. at ¶ 96.  The Alpha Beta products were first introduced in 1996, and have been distributed "widely through spa channels for use as a professional product administered by licensed estheticians." Id. at ¶ 97.  Since 2002, Alpha Beta products have also been distributed through retail channels.  Id. at ¶ 98. The primary ingredients in the products are alpha and beta hydroxy acids.  These acids peel off a layer of one's skin to aid in the exfoliation of dead skin cells.  See Barry Decl. ¶ 12, Ex. R.

*MD Formulations Line*

The MD Formulations line is a skincare system that includes cleansers, moisturizers, toners, sunscreens, anti-aging lotions, and acne products owned by defendants. See Miles Decl. ¶ 3. The complete line is sold in retail outlets such as Sephora, SkinStore, Ulta, the mdformulations.com website, and Bare Escentuals boutiques.

MDF Acquisition Corp. (which subsequently changed its name to Bioceutix, Inc., and then to MD Formulations, Inc.) acquired the MD Formulations product line and trademarks from Allergan, Inc., in May 1999. Hansen Decl. ¶ 2. MDF Acquisition Corp. (hereinafter "MDF") and Allergan entered into a purchase and sale agreement ("P&S") that transferred ownership of the MD Formulations product line and all related intellectual property rights to MDF. The P&S includes a provision that defined the field of use for sale of the MD Formulations products as follows:

> "1.15 'Field of Use' shall mean the research, development, manufacture, marketing, and sale of AHA development skin care products, (1) to skin care aestheticians worldwide and (2) to Physicians outside of the United States but expressly excluding the manufacturing, marketing, selling or distribution of such products to Physicians in the United States."

Hansen Decl. ¶ 2, Exh. 1. The P&S Agreement further provides:

> "5.9 Limitation to Territory and the Field of Use. Buyer and its Affiliates shall not at any time after the Closing use Acquired Assets or rights under the Sublicense Agreement outside the Territory or outside the scope of the Field of Use. . . . By way of example, Buyer shall not sell any of the Products to Physicians in the United States, since such purchasers are not within Buyer's Field of Use for the United States."

Id.

Defendants claim that it was their understanding that the field of use restriction referred to sales to physicians. See Hansen Decl. ¶ 3. In 2001, MDF merged with Bare Escentuals, Inc. The combined company, the defendants in this lawsuit, began to sell the MD Formulations product line in Bare Escentuals retail boutiques, and later to third-party retail stores like Sephora, Ulta, and Bare Escentuals boutiques.

In 2003, defendants notified Allergan that they were selling the product line through retail channels, and they requested that Allergan revise the P&S to modify the field of use. Allergan declined the revision but made no demand that the BE parties cease selling through retail channels. In 2003, defendants launched their first peel products under the MD Formulations product line, naming the product line the "Alpha/Beta Customized Peeling System." See Leung Decl. ¶ 6. The launch of the Alpha/Beta product line was in 2003,

at about the same time that the defendants complained of plaintiffs' use of the term "MD" as a component of their trade name.

In early 2003, defendants contacted plaintiffs to claim that plaintiffs' use of the "MD Skincare" mark infringed upon the "MD Formulations" marks owned by defendants. See Barry Decl. ¶ 11, Ex. L. Plaintiffs initiated the instant lawsuit on May 1, 2003, seeking declaratory judgment that the "MD Skincare" marks were not infringing on defendants' trademarks. Compl. ¶¶ 7-25. The lawsuit was dismissed for lack of jurisdiction, and plaintiffs appealed. In the interim, defendants commenced two actions in the United States district court for the Northern District of California, alleging trademark infringement of their "MD Formulations" marks and seeking a preliminary injunction. No preliminary injunction was issued, and defendants agreed to "withdraw and waive any objections" to this court's personal jurisdiction over them for the purposes of this lawsuit.

In September 2005, defendants launched a set of MD Formulations product kits called "My Solution." See Wilson Decl. ¶ 4, Exh. 1. Each kit targets a specific skincare problem. Id. A total of seven kits were launched. The kits are packaged in a box with the MD Formulations logo at top, the name of the kit underneath the logo, and a photo of a model's face that describes the type of kit. Id. These boxes each feature an accent color that is incorporated into

some of the printing on the front of the box and on the side panels.  See Barry Decl. ¶ 3, Exh. 2.  One of the accent colors is orange.

In conjunction with the introduction of the "My Solution" kits, defendants developed a marketing guide, which was called "Skincare Solutions" as an educational tool that discussed the science behind the MD Formulations products.  See Wilson Decl. ¶ 5, Exh. 2.  Plaintiff indicated that the brochure was not to be used or shared with retail or spa customers who would actually be purchasing the products.  The "Skincare Solutions" guide was in black and white print with orange graphics.

Defendants introduced an updated alpha beta product line called the "Professional Alpha/Beta Complete Peeling Kit," which added a cleanser, moisturizers, and sunscreen to the original product in September 2005.  Id. at ¶ 7. Plaintiffs allege that they became aware of defendants' use of the "Alpha Beta" mark in 2006, during discovery in this litigation.  Like plaintiffs' products, the main ingredients of defendants' Alpha/Beta line are alpha and beta hydroxy acids.

On January 20, 2006, plaintiffs filed an amended complaint in the lawsuit.  The plaintiffs currently seek relief for the following claims:  1) declaratory judgment that defendants do not have exclusive use of the mark "MD;" 2) relief because defendants allegedly infringed upon the "Alpha Beta" mark; 3) relief because defendants' alleged

infringement was a violation of federal unfair competition law; 4) cancellation of the "MD" marks; 5) relief under common law unfair competition; and 6) relief because defendants allegedly violated New York General Business Law § 349. The fifth and sixth claims are the subject of this motion for summary judgment. Defendants answered the second amended complaint, asserting several counterclaims. Defendants' counterclaims are as follows: 1) statutory and common law trademark infringement; 2) unfair competition; 3) statutory and common law trademark dilution; 4) trade dress infringement; and 5) cancellation of the "Alpha Beta" marks.

## DISCUSSION

Summary judgment is granted to the moving party only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact that the moving party is entitled to a judgment as a matter of law." Rule 56(c), F.R. Civ. P. "Only when no reasonable trier of fact could find in favor of the nonmoving party should summary judgment be granted." White v. ABCO Eng'g Corp., 221 F.3d 293, 300 (2d Cir. 2000)(quoting Taggart v. Time, Inc., 924 F.2d 43, 46 (2d Cir. 1991)). The court's role is to determine whether there is a genuine issue for trial, not to weigh the evidence and determine the truth of the matter. See Jewish Sephardic Yellow Pages, Ltd. V. DAG Media, Inc., 478 F. Supp. 2d 340,

343 (E.D.N.Y. 2007)(Dearie, J.)(citations omitted).  Thus, district courts must resolve all factual ambiguities and draw all reasonable inferences in favor of the nonmoving party.  See <u>Davis v. New York</u>, 316 F.3d 93, 100 (2d Cir. 2002)(<u>citing</u> <u>Cronin v. Aetna Life Ins. Co.</u>, 46 F.3d 196, 202 (2d Cir.1995)).

**1.  Partial Summary Judgment on Plaintiffs' Fifth Claim**

Plaintiffs' fifth claim for relief alleges that defendants competed unfairly in violation of New York common law, by engaging in the following conduct:  1) selling outside of the channels of trade permitted by the P&S Agreement; 2) using the color orange in the MD Formulations packaging and marketing materials; 3) referring to the MD Formulation as "M.D."; 4) using the word "skincare" after "MD Formulations" to describe products; 5) telling staff members at retail locations that there is confusion between the two brands; and 6) developing new products and adopting new product names that are similar to MD Skincare products.

Specifically, plaintiffs argue, "[Defendants'] activities in using the terms 'MD,' 'MDF,' 'MDF Skincare' and 'MD Formulations,' in intentionally using the color orange on marketing and packaging, in intentionally distributing products in excess of the scope of their own proprietary rights—are all activities deliberately aimed at misappropriating MD Skincare's goodwill associated [sic] its trademarks and brand."  Pl's Memo. Opp. on the Fifth and

Sixth Claims, at 32. Plaintiff contends that "the essence of the claim is that the BE Parties unfairly competed with MD Skincare by using the color orange. . . ." Id. at 27. Plaintiffs also argue that by using the mark "Alpha/Beta," defendants engaged in unfair competition.

Plaintiffs contend that they do not need to show that they possess a property right in the color orange, the word "MD," and in the rights provided in the P & S to prevail on their claim. This argument is without merit. "In order to succeed on their misappropriation and unfair competition claims, plaintiffs must establish some wrongful appropriation or use of the plaintiffs' intellectual property." Dow Jones & Co., Inc. v. Int'l Sec. Exch., Inc., 451 F.3d 295, 302 (2d Cir. 2006)(citing Telecom Int'l Am., Ltd. v. AT & T Corp., 280 F.3d 175, 198 (2d Cir.2001)). Plaintiffs have failed to establish that they have an intellectual property right that has been misappropriated in reference to its claims about defendants' use of the color orange and use of variations of the term "MD." A party cannot claim exclusive use of a single color, given the finite number of colors available for product packaging. Forschener Group v. Arrow Trading Co., 124 F.3d 402, 409 (2d Cir. 1997). Plaintiffs have set forth no evidence indicating that they have a property right in the color orange, and they have acknowledged that they have no

property rights in the term "MD."[1]  See Pls. Reply Memo in Supp. of Mot. For Summary Judgment, at 7 ("[T]he term 'M.D.' is extremely common and generic.").  As such, they cannot establish unfair competition based on these claims, and summary judgment is granted as to these claims.

Next, the court directs its attention to plaintiffs' claims regarding its intellectual property rights in "Alpha Beta."  As discussed in a prior decision, a reasonable juror could find that plaintiffs possess a protectable property right in the term "Alpha Beta."  See Gross v. Bare Escentuals Beauty, Inc., 2008 WL 2332307, at *4 (S.D.N.Y.)(Carter, J.)(holding that there is an issue of fact concerning the protectability of the "Alpha Beta" mark).

The basic principle of unfair competition under New York state law "is that commercial unfairness should be restrained whenever it appears that there has been a misappropriation, for the advantage of one person, or a property right belonging to another."  See Vaudable v. Montmarte, Inc., 193 N.Y.S. 2d 332, 335 (1959).  The more unique a trademark is, the greater protection it receives under common law unfair competition.  See id.  Here,

---

[1] Like the plaintiffs in Dow Jones & Company, Inc. v. International Securities Exchange, Inc., "Plaintiffs argue that New York's law of unfair competition is a 'broad and flexible doctrine that depends more upon the facts set forth. . .than in most causes of action.' "  451 F.3d 295, 302 (2d Cir. 2006)(citations omitted).  However, as the Second Circuit noted, this argument is without merit:  "Whatever the breadth and flexibility of such a claim, it depends upon the allegation of facts that, if true, would constitute misuse of plaintiffs' property. We find no such allegation."  Id.

12

plaintiffs own the trademark for "Alpha Beta" and may have a protectable property right in it.  However, the distinctiveness of the mark, and the validity of the mark is still disputable.  See Gross, 2008 WL 2332307, at *4 (S.D.N.Y. 2008)(Carter, J.).

Nonetheless, a reasonable juror could find that defendants used the alpha beta mark, if it is determined that this mark carries a protectable property right, to misappropriate the goodwill that plaintiffs have earned through the mark.  Plaintiffs point to defendants' conduct in adopting the "Alpha/Beta" name for their products notwithstanding their knowledge that plaintiffs already used the "Alpha Beta" name on their peel products.  This conduct may amount to unfair competition if there is bad faith and the Alpha Beta marks are protectable.

Consequently, defendants' motion for summary judgment for claims regarding the misappropriation of the alpha beta mark is denied because a reasonable juror can conclude that plaintiffs' intellectual property interests in "Alpha Beta" were misappropriated.

2.  **Partial Summary Judgment on Plaintiffs' Sixth Claim**

Plaintiffs' sixth claim for relief alleges that defendants violated New York General Business Law § 349[2] by using the color orange, adopting similar product names, and

---

[2] In relevant part, New York General Business Law § 349 states the following:  "Deceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state are hereby declared unlawful."    N.Y. Gen. Bus. L. § 349(a).

13

referring to their products as "M.D." and "MD Formulations skincare."

To prove deceptive trade practices under New York General Business Law § 349, plaintiffs must establish the following: "(1) the defendant's deceptive acts were directed at consumers; (2) the acts are misleading in a material way; and (3) the plaintiff has been injured as a result." Maurizio v. Goldsmith, 230 F.3d 518, 521 (2d Cir. 2000). Business competitors can bring a claim under this statute where the public interest is at issue. See Securitron Magnalock Corp. v. Schnabolk, 65 F.3d 256, 264 (2d Cir.1995)(citations omitted). However, when a business competitor makes a section 349 claim, "[i]t is clear that 'the gravamen of the complaint must be consumer injury or harm to the public interest.'" Id. "Injury or harm that satisfy this standard include 'potential danger to the public health or safety.'" La Cibeles, Inc. v. Adipar, Ltd., 2000 WL 1253240, at *15 (S.D.N.Y. 2000)(Schwartz, J.).

Competitors must allege conduct that has "significant ramifications for the public at large" in order to prove a section 349 claim. See Shred-It USA, Inc. v. Mobile Data Shred, Inc., 228 F. Supp. 2d 455, 465 (S.D.N.Y. 2002)(Marrero, J.) (citations omitted). "The courts of this Circuit have held that trademark infringement actions alleging only general consumer confusion do not threaten the direct harm to consumers that is required to state a

14

claim under Section 349." Sports Traveler, Inc. v. Advance Magazine Publishers, Inc., 1997 WL 137443, at *3 (S.D.N.Y. 1997)(Keenan, J.); see also Winner Int'l v. Kryptonite Corp., 1996 WL 84476, at *3 (S.D.N.Y. 1996)(Wood, J.)(noting that "Courts routinely reject such attempts to fashion Section 349 ... claims from garden variety disputes between competitors. . . .").

Here, plaintiff is a business competitor and must prove "significant ramifications for the public at large" in order to prevail on their sixth claim for relief. See Shred-It, 228 F. Supp. 2d at 465. Plaintiffs point to conduct (use of the color orange, use of the term "MD," use of term "Alpha Beta") that is clearly beyond the definition of "public interest" under this section. Consumer confusion as to the source of the product does not create a cause of action under this statute. Danger to the public safety and health does. The conduct that plaintiffs has presented is too insubstantial and does not affect the public interest as contemplated by this provision. As such, defendants' motion for partial summary judgment on plaintiffs' sixth claim for relief is granted.

## CONCLUSION

For the foregoing reasons, defendants' motion for summary judgment, pursuant to Rule 56, F.R. Civ. P., is denied on plaintiffs' fifth claim as it pertains to the claims involving the Alpha Beta trademark and granted as it pertains to plaintiffs' other claims. Defendants' motion for partial summary judgment on the plaintiffs' sixth claim for relief is granted.

**IT IS SO ORDERED**

DATED:  New York, New York
        September 3, 2008

                                **ROBERT L. CARTER**
                                **U.S.D.J.**